UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

JEFF BAILEY,
Plaintiff

v.     Case No. 6:24-CV-06095-SOH

DEREK SCOTT FINKBEINER
In his personal and official capacities,

JENNIFER E. CORLEY
In her personal capacity
Defendants

FILED
United States District Court
Western District of Arkansas
May 23 2025
Office of the Clerk

## MOTION TO COMPEL

COMES NOW the Plaintiff JEFF BAILEY, pro se, and moves the Court to compel answers from Derek Scott Finkbeiner to interrogatories and responses to requests to produce documents pursuant to Rules 33, 34, and 37 of the Federal Rules of Civil Procedure.

1

## INTRODUCTION

1. This Motion to Compel is the result of two sets Interrogatories propounded by Plaintiff Jeff Bailey on Defendant Derek Scott Finkbeiner.

2. The first set of Interrogatories was propounded on January 19, 2025 and answered on February 18, 2025 (see MTCF EXHIBIT 1)

3. The second set of Interrogatories was propounded on March 9, 2025 and answered on April 8, 2025. (see MTCF EXHIBIT 2)

## AMY WILLIAMS

4. On or about May 23, 2024 Plaintiff was blocked from the Hot Spring Crime Watch page operated by Defendant Finkbeiner. (see MTCF EXHIBIT 3)

5. On May 25th or 26th Defendant Finkbeiner posted a defamatory post about Plaintiff on his Hot Spring County Crime Watch page using his fake profile, Amy Williams. (EXHIBIT 5 OF ORIGINAL COMPLAINT)

6. Defendant Finkbeiner knew at the time of his post that his statements about Plaintiff were inaccurate.

7. Defendant Finkbeiner, at all times, was the sole guardian and controller of all records, posts, comments and emojis of the fake profile Amy Williams.

8. Defendant Finkbeiner had a duty and responsibility to protect and preserve the electronic records related to fake profile Amy Williams.

9. On May 29, 2024 Plaintiff sent Defendant Finkbeiner a certified letter requesting re instatement to the Hot Spring County Crime Watch page. Defendant Finkbeiner did not accept delivery of the letter.

10. Plaintiff Bailey prepared the complaint for this case between the dates of July 13, 2025 and July 15, 2025.

11. On July 18, 2024 Plaintiff filed this case in the Western District of Arkansas.

12. On July 23, 2024 Defendant Finkbeiner was served.

13. Paragraphs 58 through 69 of the original Complaint make reference to the Facebook profile of Amy Williams.

14. Plaintiff prepared his original Complaint between the dates July 13, 2024 and July 15, 2024 using posts directly from Facebook, from Amy Williams Facebook profile.

15. Since Plaintiff was blocked from seeing the Hot Spring County Crime Watch page, the Amy Williams posts saved by Plaintiff, were saved as "Saved Pages" in the Facebook application, on his wife's Facebook account, Crystal Bailey.

16. In responding to the original complaint Defendant Finkbeiner did not indicate that he was the creator of the fake Facebook profile Amy Williams.

17. On February 18, 2025, in responding to Plaintiffs Interrogatories, Defendant Finkbeiner admitted that he created the Facebook profile, Amy Williams.

18. Defendants Finkbeiner, Corley or another person authorized by them had to approve the participation, posts and comments of Defendant Finkbeiner's fake profile, Amy Williams.

19. Defendant Finkbeiner was aware in May 2024, that the statements of fake profile Amy Williams were defamatory.
20. Defendant Finkbeiner deleted the Facebook records of his Amy Williams activity in the Hot Spring County Crime Watch page.
21. Defendant Finkbeiner as a trained law enforcement professional, is an expert in rules of evidence and the rules governing the destruction of evidence.
22. Defendant Finkbeiners responses to paragraphs 58, 60, 61, 62, 63, 64, 66, 67 and 68 in the original complaint, while not lies, are clearly deceptive.
23. Defendant Finkbeiner states in response to Interrogatories that he does not recall the date the profile Amy Williams was created, does not know of any posts from the fake profile and does not have any record of the profile's activity.
24. Defendants counsel has indicated that the Amy Williams Facebook profile was deleted, but does not know when that was.
25. Facebook policy allows for recovery of a profile for a period of 30 days after it is deleted.
26. Facebook policy allows for a deleted profile to be accessed or reversed for a period of 30 days after it is deleted.
27. Defendant Finkbeiner had ability, access and responsibility to preserve the Amy Williams profile until at least August 12, 2024 if not later.

## REQUEST FOR PRODUCTION NO 1 - FACEBOOK ACTIVITY LOG

28. Per conversation with Defendants counsel, Plaintiffs REQUEST FOR PRODUCTION NO1, production of Defendants Facebook Activity Log, from Interrogatories propounded on January 19, 2025, was rejected partially based on the inability of Finkbeiner and his attorney to retrieve it from his computer.

29. Facebook provides an Activity Log for all accounts unless the log has been deleted by the user.

30. Defendant Finkbeiner originally objected to production of the Activity Log based on two grounds. First, that the request is overly broad and unduly burdensome and not proportional to the needs of the case.

31. Defendant Finkbeiner's attorney stated in a telephone conference that he and Defendant Finkbeiner attempted to access the Activity Log but were unsuccessful.

32. Some clicks of a mouse and print to PDF function should not be considered unduly burdensome.

33. The second objection was because "the Hot Spring County Crime Watch page is intended to be a private group for county residents to communicate between each other regarding what is going on in the community and to relay information to help find stolen property, missing people, and to let everyone know if something is happening we all need to know about. The requested information contains sensitive communications of members of the private Facebook group who are not parties to this litigation."

34. Plaintiff maintains the website was a public forum being used by the Sheriff to disguise his illegal activities and promote conspiracy theories about legitimate law enforcement and his political enemies.

35. Plaintiff has offered to perform his own Facebook research if Defendant Finkbeiner will provide his Facebook credentials. This offer has been rejected.

36. The Facebook Activity log is highly relevant to the Plaintiffs case in determining timelines, relevance, witness lists and impeaching Defendants credibility.

## INTERROGATORY REQUQUESTS NO 11 AND 16
## PROVIDE COPIES OF POSTS AND COMMENTS

37. Plaintiffs INTERROGATORIES NO 11 AND 16 requests copies of the posts of Defendant Finkbeiner on the Hot Spring County Crime Watch page for the period of time from January 1, 2023 through present day.

38. At the time this Interrogatory was propounded, Defendant Finkbeiner was still the Sheriff of Hot Spring County.

39. Defendant Finkbeiner objected on two grounds. First, that the request is overly broad, and not proportional to the case and second because the Hot Spring County Crime Watch page is intended to be a private group for county residents "to communicate between each other regarding what is going on in the community and to relay information to help find stolen property, missing

6

people, and let everyone know if something is happening we all need to know about."

40. Plaintiff's complaint states a violation of the First Amendment based on Defendants deleting and blocking his posts and comments in a public forum.

41. In the Lindke v Freed (US Supreme Court No 22-611) ruling, second to last paragraph, the Supreme Court held that… *"So far as deletion goes, the only relevant posts are those from which Lindke's comments were removed. Blocking, however, is a different story. Because blocking operated on a page-wide basis, a court would have to consider whether Freed had engaged in state action with respect to any post on which Lindke wished to comment. The bluntness of Facebook's blocking tool highlights the cost of a "mixed use" social-media account: If page-wide blocking is the only option, a public official might be unable to prevent someone from commenting on his personal posts without risking liability for also preventing comments on his official posts.*

42. The Supreme Court has held that when a citizen is blocked by a public official on social media, the entirety of the social media page is relevant and must be considered.

43. Plaintiff was blocked from Defendant Finkbeiners Hot Spring County Crime watch page prior to defamatory remarks being posted by Defendant Finkbeiner in his fake profile, Amy Williams.

44. Nearly all of Defendant Finkbeiners posts to the Hot Spring County Crime watch page while he was active in office were posted in his official capacity.

7

45. There were few if any personal posts made by Defendant Finkbeiner on the Hot Spring Crime Watch page and all of his activity is subject to Discovery.

46. Defendant employed a paid Sheriffs Deputy to act as moderator for the Hot Spring Crime Watch page which eliminates the suggestion that the page was somehow personal in nature.

47. Plaintiff must have access to all of the posts, comments and emoji's of Defendants Finkbeiner and Corley, Defendant Finkbeiner's Activity Log as well as all posts comments and emoji's of Finkbeiners fake profile of Amy Williams to present his case.

## LACK OF CANDOR

48. Defendant Finkbeiner was deceptive in his responses to the original Complaint with regards to his false identity as Amy Williams.

49. If Defendant Finkbeiner has deleted his fake profile of Amy Williams, he did it after the original Complaint was filed.

50. Plaintiff's exhibits in his original Complaint clearly indicate that he was accessing the Hot Spring County Crime Watch page through his wife's account, Crystal Bailey.

51. During Discovery Defendant Finkbeiner realized this fact and on February 16, 2025 blocked the Crystal Bailey account from accessing the Hot Spring County Crime Watch page, thereby undermining Discovery.

52. Crystal Bailey has never posted or commented on anything on the Hot Spring County Crime Watch page and has no position in this action.

53. Crystal Bailey's membership in the Hot Spring County Crime Watch page was Plaintiffs only access to see posts, comments and emoji's related to the page, including but not limited to pages she saved within the Facebook platform related to the Hot Spring County Crime watch page.

54. Additionally, from January 2023 to November 2023, Defendant Finkbeiner, as Sheriff of Hot Spring County, employed Deputy Sheriff Eric Fain as a law enforcement officer with the Hot Spring County Sheriff's Department.

55. During this period Deputy Fain was also moderator of the Hot Spring County Crime Watch page.

56. Deputy Fain performed moderator duties while he was on duty as a Deputy Sheriff and being paid by the citizens of Hot Spring County.

57. Plaintiff discovered this information despite Defendant Finkbeiner failing to name the Moderator / Deputy in his answer to Plaintiff's Interrogatory No 13. (Exhibit MTCF EXHIBIT 1)

58. Plaintiff's Interrogatory 13 asked for the names of all moderators past and present for the Hot Spring Crime Watch page.

59. Defendant Finkbeiner was clearly deceptive in his answer.

## CONCLUSION

60. In March and May 2025 Plaintiff, in compliance with Local Rule 7.2, Plaintiff conferred with Defendant Finkbeiners Attorney in an attempt to resolve their differences and honestly discuss the issues regarding the responses of

Defendant Derek Finkbeiner to submitted Interrogatories and Requests for Production.

61. During this conference Plaintiff explained in common terms what information he was seeking from Defendant Finkbeiner. Attorney Adams was attentive and responsive to Plaintiff's concerns and indicated that he understood what information Plaintiff was seeking.

62. Plaintiff has propounded reasonable INTERROGATORIES and REQUESTS FOR PRODUCTION upon Defendant Finkbeiner.

63. Objections made by the Defendant regarding the discoverability of the information requested are not sustainable based on the Supreme Courts ruling of Lindke v Freed as well as the rules governing the preservation of electronic media.

64. The INTERROGATORIES AND REQUESTS FOR PRODUCTION propounded by the Plaintiff were presented in a way that any reasonable person would understand what information is being requested.

65. In conferring with Defendant Finkbeiner's Attorney, Plaintiff is satisfied that Defendant Finkbeiner understands the information Plaintiff is seeking and Defendants Attorney indicated he understood what information Plaintiff was seeking.

66. Defendant Finkbeiner has failed to comply with Rules 33, 34 and 37 of the Federal Rules of Civil Procedure. Rule 33 provides for the use of Interrogatories to parties and Rule 34 provides for the use of requests for production. Rule 37(a)(2) allows for a party to move for a court order

compelling an answer to discovery taken under Rules 33 and 34 when a party fails to comply with such Discovery.

67. The parties have conferred in good faith on the issues contained herein and we are not able to resolve our disagreements without the intervention of the court.

68. Plaintiff requests an Order to Comply with Discovery in the aforementioned areas, in which Defendant reinstates Crystal Bailey's access on the Hot Spring County Crime Watch page until the close of this lawsuit. Defendant should be ordered to comply with REQUEST FOR PRODUCTION NO 1 and INTERROGATORIES NO 11 AND 16. Additionally, Defendant should comply with Interrogatory 19 and Request for Production No 10, regarding the fake Amy Williams profile.

69. Plaintiff seeks any and all relief deemed just by this court.

Respectfully Submitted,

/Jeff Bailey – Plaintiff

Dated May 22, 2025

### Certificate of Service

Winston C. Mathis
PO Box 399
Arkadelphia, AR 71923
870-246-5886
mathislawfirm@gmail.com

John T. Adams
jadams@fc-lawyers.com

Annie Depper
adepper@fc-lawyers.com

David Fuqua
dfuqua@fc-lawyers.com

Sam Baber
sbaber@fc-lawyers.com

Jordan Self
jfowler@fc-lawyers.com

Kristen Gibson
KGibson@fc-lawyers.com

I hereby certify that on May 22, 2025 I emailed the above participants in this case and mailed a copy of this motion to each law office with the US mail.